AUSA: Connie L. Dang

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ENGELS TAVERAS and
LENIN ABREU-VALERIO,

Defendants.

**24 MAG 3309**

<u>COMPLAINT</u>

Violations of 21 U.S.C. §§ 841 & 846

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

ALEX JOHNSON, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
(Conspiracy to Distribute Narcotics)

1. On or about September 11, 2024, in the Southern District of New York and elsewhere, ENGELS TAVERAS and LENIN ABREU-VALERIO, the defendants, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled-substance laws of the United States.

2. It was a part and object of the conspiracy that ENGELS TAVERAS and LENIN ABREU-VALERIO, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance involved in the offense was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

### COUNT TWO
(Narcotics Possession with Intent to Distribute)

4. On or about September 11, 2024, in the Southern District of New York and elsewhere, ENGELS TAVERAS and LENIN ABREU-VALERIO, the defendants, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and aided and abetted the same.

5. The controlled substance involved in the offense was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United

States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Sections 812, 841(a)(1) and 841(b)(1)(A); Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6. I am a Special Agent with the DEA, and I have been a Special Agent with the DEA for approximately 2.5 years. I have been personally involved in this investigation. This affidavit is based on my involvement in this investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

7. Based on my personal observations and my conversations with other law enforcement officers, I learned the following:

a. On or about September 11, 2024, law enforcement officers observed an individual later identified as ENGELS TAVERAS, the defendant, pull over a vehicle ("the Vehicle") in the vicinity of 164th Street and Amsterdam Avenue in New York, New York. Shortly thereafter, an unknown male handed TAVERAS a weighted white plastic bag through the Vehicle's passenger's side window. Based on my review of Department of Motor Vehicle records for the Vehicle, I learned, among other things, that the Vehicle is registered to "Engels R. Taveras" and that the address listed on the vehicle registration is a particular apartment located in Harlem, New York ("the Apartment"). After TAVERAS received the weighted white plastic bag from the unknown male, he drove the Vehicle to the vicinity of the Apartment.

b. TAVERAS exited the Vehicle carrying a weighted black plastic bag and a weighted white plastic bag and entered the Apartment's building using what appeared to be a key fob and while carrying the two bags. As TAVERAS was entering the building an undercover law enforcement officer ("UC-1") followed behind TAVERAS, causing TAVERAS to stare closely at UC-1. After staring at UC-1 and waiting for UC-1 to pass him, TAVERAS promptly exited the Apartment's building, while still carrying weighted black plastic bag and the weighted white plastic bag.

c. After TAVERAS left the Apartment's building, law enforcement then observed TAVERAS wait on the sidewalk in front of the building; specifically, law enforcement observed TAVERAS set the weighted black plastic bag and the weighted white plastic bag on the sidewalk, pace back and forth near the bags for approximately 10 to 15 minutes, and observe his surroundings. While the TAVERAS was on the sidewalk, law enforcement observed the TAVERAS stare at a different undercover law enforcement officer ("UC-2") who was seated in an unmarked vehicle parked on the street near the Apartment's building. After UC-2 drove away from the location, law enforcement officers observed TAVERAS promptly enter the Apartment's building with the weighted black plastic bag and the weighted white plastic bag.

   d. Shortly after TAVERAS entered the Apartment's building, a law enforcement officer who was on the landing between the building's third and fourth floors heard an individual leave the second floor (i.e., the floor on which the Apartment is located). Shortly thereafter, law enforcement observed TAVERAS leave the building without any bags. Approximately one hour later, law enforcement observed TAVERAS enter the Apartment's building again and a law enforcement officer observed TAVERAS enter the Apartment.

   e. Later that day, law enforcement observed TAVERAS leave the Apartment's building and drive the Vehicle to an apartment building in Yonkers, New York.

  8. On or about September 11, 2024, the Honorable Robert W. Lehrburger, United States Magistrate Judge of the Southern District of New York, authorized a warrant to search the Apartment, which was then searched. Based on my personal observations and my conversations with other law enforcement officers involved in the search of the Apartment, I learned the following:

   a. An individual later identified to be LENIN ABREU-VALERIO, the defendant, was present at the Apartment while the search was conducted.

   b. During the search of the Apartment, law enforcement officers encountered what appears to be narcotics, as well as the materials and equipment used to weigh, press, process and package narcotics.

   c. Specifically, law enforcement officers recovered various suspected narcotics (the "Suspected Narcotics"), which include a large brick of pressed powder that was vacuum sealed in plastic and stamped with a "Bugatti" logo, two vacuum sealed bags of pressed powder, as well as dozens of bundles of glassine vials held together by rubber bands.[1] Law enforcement officers recovered portions of the Suspected Narcotics from storage compartments built into a sofa and ottoman in the Apartment's living room and from the bedroom closet, which was open at the time the Apartment was searched. Below are photos of certain of the Suspected Narcotics recovered from the Apartment, including the brick of pressed powder that was vacuum sealed in plastic and stamped with a "Bugatti" logo and the two vacuum sealed bags of pressed powder (top) and the bundles of glassine vials held together by rubber bands (bottom):

---

[1] Based on my training and experience, I know that individuals who distribute narcotics often stamp their narcotics with logos to make their product distinctive to buyers and as a form of branding for the product.

3





d.      ABREU-VALERIO was present when law enforcement officers recovered the large brick of pressed powder stamped with a "Bugatti" logo and when he observed that law enforcement had recovered the brick, ABREU-VALERIO stated, in sum and substance, "you don't have to tear apart the apartment; there is no more."

e.      Additionally, law enforcement officers recovered from the bedroom closet a manual press used for pressing narcotics into kilogram-weight bricks and a clear bin that contained sifters and grinders used for processing narcotics, scales for weighing narcotics, empty

glassine vials, and small bags of white powder. Law enforcement officers encountered in the hallway closet gas masks which, based on my training experience, I know are used by individuals who handle narcotics like fentanyl to limit their own exposure to the dangerous substance. Law enforcement officers recovered from the kitchen counter a device used to vacuum seal narcotics or cash. Below is a photograph of the manual press used for pressing narcotics recovered from the Apartment:



    f. Law enforcement officers also identified a bin in the bedroom that contained black plastic bags similar in appearance to the weighted black plastic bag TAVERAS was seen carrying, and they encountered a white plastic bag on the kitchen counter similar in appearance to the weighted white plastic bag TAVERAS was seen carrying.

    g. Law enforcement officers recovered from the Apartment multiple pieces of mail addressed to ENGELS TAVERAS, the defendant, at the Apartment's address. For example, law enforcement officers recovered a Consolidated Edison bill addressed to TAVERAS at the Apartment's address as well as a letter from the New York City Department of Finance addressed to TAVERAS at the Apartment's address, which contained a copy of a traffic ticket for the Vehicle.

    h. Law enforcement officers also recovered from a backpack in the Apartment's bedroom (i.e., the bedroom with the open closet containing certain of the Suspected Narcotics) several identification cards, including a Dominican Republic passport, in the name of ABREU-VALERIO and photographs that matched ABREU-VALERIO's appearance.

    i. ABREU-VALERIO was placed under arrest. As law enforcement officers were leaving the Apartment with ABREU-VALERIO, ABREU-VALERIO indicated that a set of keys in the living room were his keys and law enforcement officers used those keys to lock the Apartment.

9.  Based on my participation in this investigation, my personal observations, and my conversations with other law enforcement officers, I also learned, among other things, ENGELS TAVERAS, the defendant, was arrested in Yonkers, New York on or about September 11, 2024, after the Apartment was searched.

10. Based on my participation in this investigation and my discussions with law enforcement officers, I know that a field test was performed on the Suspected Narcotics, which was positive for fentanyl. In total, the estimated weight of the Suspected Narcotics, including the packaging, is approximately two kilograms.

WHEREFORE, I respectfully request that ENGELS TAVERAS and LENIN ABREU-VALERIO, the defendants, the defendants, be imprisoned or bailed, as the case may be.

/s authorized electronic signature
_____
ALEX JOHNSON
Special Agent
Drug Enforcement Administration

Sworn to before me this 12th day of September, 2024.

_____
THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York